CHANDLER, J.,
for the court:
¶ 1. Appellant King Edward May was indicted by a Harrison County grand jury for the sexual battery, capital rape, and statutory rape of his minor daughter. Following a trial, the jury found May guilty of sexual battery, but acquitted him on the charges of capital rape and statutory rape. The circuit court sentenced May to twenty years imprisonment in the custody and control of the Mississippi Department of Corrections without hope of parole or probation. Aggrieved, May cites the following issues on appeal:
I. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. WHETHER THE TRIAL COURT ERRED IN DENYING MAY’S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
III. WHETHER THE TRIAL COURT ERRED BY REFUSING TO LET THE VICTIM’S MOTHER TESTIFY IN THE FORM OF OPINION ABOUT THE VICTIM’S VERACITY.
STATEMENT OF THE FACTS
¶ 2. King Edward May, a Captain Reserve Officer with the Gulfport Police Force, was accused by his adopted daughter of sexual molestation.
¶ 3. The victim, eleven years old at the time of the trial, testified that May frequently forced her to have both oral and *316 vaginal intercourse. She stated that May’s sexual demands were continuous, occurring for more than two and one-half years; however, she could not recall exactly how many times. The victim also provided a detailed, graphic description of May’s anatomy.
¶ 4. Eventually the victim came forward, although her reasons for doing so are unclear. At one point the victim testified that she came forward after Jane Doe[1], the daughter of the victim’s godmother, told her the story of another girl who had been molested. However, the victim later testified that she told Jane Doe about May’s sexual demands prior to Jane Doe telling the story of the other girl who had been molested. Likewise, Jane Doe testified that she did not tell the story until after the victim revealed May’s activities. Regardless, it is clear that shortly after their conversation, the victim and Jane Doe called the Department of Human Services (DHS) and spoke with a social worker.
¶ 5. On June 2, 1999, police took custody of the victim and her brother and placed them in a shelter. While in the shelter, Adriane Jackson, a social worker with DHS, interviewed the victim. The victim told Jackson that May molested her. Jackson then scheduled a psychological evaluation for the child.
¶ 6. Doctor Donald Matherne conducted the psychological evaluation. He testified that the victim specifically described how May had placed “his penis in my vagina and made me suck his private or suck his nipple.” Furthermore, Dr. Matherne testified that the victim knew the size and structure of May’s penis and that she accurately described the color and temperature of his semen. Dr. Matherne concluded that the victim showed no signs of being coached and that her detailed descriptions of her father’s sexual organ and the sexual process lead to one conclusion: she had been sexually abused.
¶ 7. Doctor Matherne’s testimony was corroborated with physical evidence that the victim had actually been sexually abused. Doctor Ronald Bruni, the victim’s pediatrician, noticed that in May of 1997, the victim’s “hymenal opening seemed a bit wider open than it normally should be for this age child.” At that time the victim denied that May had sexually abused her. However, she later testified that she remained silent because May warned her that “if you tell anyone, something [will] happen.”
¶ 8. Likewise, Doctor Curtis Broussard, a general physician, examined the victim on June 4, 1999, and concluded that the victim’s hymenal ring was no longer intact. However, she was later examined by Doctor Carl Townsend, an OB/GYN specialist, who testified that the victim showed no physical signs of sexual molestation. Nonetheless, Dr. Townsend cautioned that “just because I do a negative find ... does not mean it [molestation] did not occur, particularly in younger individuals where healing can take place ... in such a short period of time.... ”
I. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 9. May claims that the guilty verdict is contrary to the overwhelming weight of the evidence. May first raised this argument in a motion for a new trial. It is well established that new trial decisions rest within the discretion of the trial court. McClain v. State, 625 So.2d 774, *317 781 (Miss.1993). Likewise, this Court is obligated to accept all evidence supporting the verdict as true and will reverse only where it is clear that the trial court has abused its discretion by refusing a new trial. Herring v. State, 691 So.2d 948, 957 (Miss.1997). Ultimately, a motion for a new trial should only be granted when the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable justice. Wetz v. State, 503 So.2d 803, 812 (Miss.1987).
¶ 10. May contends that the jury verdict cannot stand because of several inconsistencies between testimony given by the victim and that given by Jane Doe. However, “[o]ur case law is axiomatic on the proposition that the jury is [the] arbiter of the credibility of testimony.” Collier v. State, 711 So.2d 458, 462 (¶ 18) (Miss.1998). Additionally, all inconsistencies or contradictions fall under the issue of witness credibility and, therefore, should only be considered by the trier of fact. Blade v. State, 240 Miss. 183, 188, 126 So.2d 278, 280 (1961). Therefore, any inconsistency between the testimony of the victim and that of Jane Doe was to be addressed and resolved by the jury, not this Court.
II. DID THE TRIAL COURT ERR IN DENYING MAY’S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT?
¶ 11. May argues that the evidence was insufficient to support the adverse verdict and, as such, the trial court should have granted a JNOV. When reviewing a trial court’s denial of a motion JNOV, this Court considers “the sufficiency of the evidence as a matter of law ... in a light most favorable to the State.” McClain, 625 So.2d at 778. Likewise, this Court will accept any credible evidence that supports guilt as true, granting the prosecution “the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Wetz, 503 So.2d at 808. This Court will only reverse where “no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.” May v. State, 460 So.2d 778, 781 (Miss.1984).
¶ 12. In the instant case, May argues that the victim not only gave inconsistent testimony, but that her testimony was uncorroborated. In support of this argument, May cites to a recent Mississippi Supreme Court decision for the proposition that “the totally uncorroborated testimony of a ... victim is sufficient to support a guilty verdict where the testimony is not discredited or contradicted by other evidence.” Vaughan v. State, 759 So.2d 1092, 1098 (¶ 18) (Miss.1999).
¶ 13. According to May, the inconsistencies in the victim’s testimony along with the testimony of Dr. Townsend discredit and contradict the uncorroborated testimony of the victim. However, it would defy reason for this Court to conclude that the victim’s testimony went uncorroborated. For instance, after examining the victim for psychological disorders, Dr. Matherne concluded that the victim’s mental state and detailed knowledge of her father’s anatomy were consistent with that of one who has been sexually molested. Furthermore, both Dr. Bruni and Dr. Broussard conducted physical examinations of the victim, noting that her hymen was no longer intact, a condition indicating sexual activity. Finally, Dr. Townsend emphasized that his failure to find any physical evidence of sexual abuse did not lead to the conclusion that the victim had not been sexually abused. Based on this medical evidence alone, it would be reasonable for a juror to find May guilty beyond a reasonable doubt. Therefore, May’s claim *318 that the evidence was legally insufficient has no merit.
III. DID THE TRIAL COURT ERR BY REFUSING TO LET THE VICTIM’S MOTHER TESTIFY IN THE FORM OF OPINION ABOUT THE VICTIM’S VERACITY?
¶ 14. May argues for the first time on appeal that the trial court should have permitted Glenda May to state her opinion of the victim’s propensity for telling lies, rather than limit her testimony to the victim’s reputation in the community.
¶ 15. The Mississippi Supreme Court has said that the admissibility and relevancy of evidence are within the trial court’s discretion and, absent an abuse of that discretion, the trial court’s decision will not be reversed. Reynolds v. State, 784 So.2d 929, 932(¶ 7)(Miss.2001). Deference will be given to the trial judge as long as he or she remains within the confines of the Mississippi Rules of Evidence. Johnston v. State, 567 So.2d 237, 238 (Miss.1990). Moreover, “the admission or exclusion of evidence must result in prejudice and harm, if a cause is to be reversed on that account.” Jackson v. State, 594 So.2d 20, 25 (Miss.1992).
¶ 16. In the case at hand, the defense counsel stated that he intended to call Glenda May to testify about the victim’s character. Specifically, the defense counsel asserted that he “would like to get into some details with the mother of [the victim] as far as raising her ... and [the victim’s] tendency to lie and blame it on her brother.” The trial court correctly denied the defense counsel’s request, noting that such testimony entailed specific instances of conduct as prohibited under M.R.E. 405. The trial court then ordered all character testimony to be in the form of reputation. However, the court never prevented Glenda May from giving an opinion of her daughter’s tendency to lie. The Mississippi Supreme Court has noted that “a trial court is not put in error unless it has.the opportunity to pass on the question.” Swington v. State, 742 So.2d 1106, 1110 (¶ 9) (Miss.1999). Therefore, whereas May never raised the issue of opinion testimony at the trial level, he is procedurally barred from asserting this objection for the first time on appeal.
CONCLUSION
¶ 17. May was not entitled to a new trial based on a few inconsistent statements made by the victim and Jane Doe. This' Court has made it clear that the duty of determining credibility is exclusively delegated to the jury. Furthermore, the victim’s testimony that she was molested, along with the medical evidence offered to corroborate her claims, was legally sufficient to constitute sexual battery; thus, the trial court correctly denied May’s motion for a JNOV. Finally, the trial court never ruled on the admissibility character evidence in the form of Glenda May’s opinion of the victim’s, dishonest character; therefore, May was procedurally barred from asserting the issue for the first time on appeal.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF COUNT I SEXUAL BATTERY AND SENTENCE OF TWENTY YEARS WITHOUT PAROLE OR PROBATION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J, KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS and BRANTLEY, JJ., concur.

. Jane Doe, the alias listed in this case, is used to protect the identity of an individual close to the minor victim.