EASLEY, Justice,
for the Court.
PROCEDURAL HISTORY
¶ 1. Glenda May (May) appeals the decision of the Harrison County Youth Court Judge Michael H. Ward (youth court) terminating her parental rights. The Harrison County Department of Human Services (DHS) filed an amended petition to terminate May’s parental rights on December 12, 2001. The youth court conducted its hearing on DHS’s request for termination of parental rights on January 30, 2002. On January 29, 2003, the youth court terminated May’s parental rights. May’s motion for reconsideration was denied by the youth court. May filed her notice of appeal to this Court.
FACTS
¶ 2. May and her husband, King May (King), had 3 children, 1 female and 2 males. In 1994, DHS conducted an investigation into May’s use of corporal punishment on her children including marks between her daughter’s legs made by a belt. In 1996, DHS again investigated allegations making a referral of neglect and abuse including marks on the face of one of her sons.
¶ 3. In 1998, new allegations of physical abuse were made to DHS regarding the minor children. According to the testimony of DHS social worker, Lori Harris (Harris), she investigated allegations of May’s suspected abuse and marks on the children identified in the transcript as H. and H.M. From the record, it appears that children H. and H.M. are May’s two male children. Harris testified that child H. told her that his mother had caused the marks and bruises. She stated that child H. had several bruises to the lower back and buttocks due to the spanking May administered. Harris further stated that when she spoke with May, she admitted that she had whipped H. with a board as punishment on the previous night. May entered into an informal agreement with DHS that she would no longer use corporal punishment on her children.
¶ 4. Again, DHS was involved with the minor children due to accusations that King, the children’s father, molested (raped) his daughter.[1] On June 11, 1999, based on the molestation accusations, the youth court ordered the minor children taken into the custody of the DHS. May disputed that her husband, King, had molested their child even testifying on his behalf at his bond hearing. King was subsequently convicted. See May v. State, 806 So.2d 314 (Miss.Ct.App.2001).[2]
¶ 5. May entered into a service agreement with the DHS which required her to complete parenting classes, attend counseling at Gulf Coast Mental Health (GCMH) and participate in DHS supervised visits with the minor children and a psychologi *77 cal evaluation. Even though May had complained about her counselor and was allowed to switch counselors, she had not completed her court ordered classes at GCMH by the date of the termination hearing.[3] Besides not completing the counseling at GCMH, May continued to have visits and contacts with King. May had not filed for divorce at the time of the termination hearing.[4]
¶ 6. On January 30, 2002, at the termination hearing, May for the first time acknowledged that she believed her daughter’s accusations that King had molested her. Until this time, May had stated that she did not believe the child’s accusations. In fact, May testified at King’s criminal trial on behalf of the defense regarding her daughter’s character. May, 806 So.2d at 318. The trial court did not prevent May from giving an opinion as to her daughter’s tendency to lie, but it ordered that the character testimony be in the form of reputation and not specific instances of conduct. Id.
¶ 7. King received a jury trial and was convicted of sexual battery. Id. King was sentenced to 20 years without parole or probation. Id. The Court of Appeals affirmed the conviction and the sentence. Id. King voluntarily submitted paperwork to surrender all his parental rights to the minor children.
¶ 8. The minor children were appointed a Guardian Ad Litem (GAL). The GAL recommended that an alternative to termination of parental rights, like durable legal custody, be considered by the youth court.
¶ 9. The youth court had a hearing on whether to terminate May’s parental rights. The youth court issued its order holding that May’s parental rights be terminated. The youth court denied May’s motion for reconsideration. May now appeals to this Court raising the following issues:
I. Whether the youth court erred in terminating her parental rights.
II. Whether the youth court erred in not considering durable legal custody as an alternative placement.
DISCUSSION
¶ 10. The burden of proof in order to establish a case for termination of parental rights is clear and convincing evidence. See Miss.Code Ann. § 93-15-109 (Supp 2003). However, on appeal, this Court’s standard of review of a youth court judgment is limited; we may reverse only if reasonable men could not have found as the youth court did beyond a reasonable doubt. In re S.B., 566 So.2d 1276, 1278 (Miss.1990) (quoting In re M.R.L., 488 So.2d 788, 790-91 (Miss.1986)). Where a trial judge sits without a jury, the trial court’s factual determinations will not be disturbed where the record contains substantial supporting evidence. The entire record must be examined and that evidence which supports or reasonably tends to support the findings of fact made by the trial judge together with all reasonable inferences which may be drawn therefrom and which favor the lower court’s findings of fact, must be accepted. Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss.1987). In G.Q.A. v. Harrison County Dept. of Human Services, 771 So.2d 331, 334-35 (Miss.2000), we held that “a Family Court judgment concerning termination of parental rights will be reviewed *78 under the same standard as a Chancery-Court judgment, which is clear and convincing evidence. See Miss.Code Ann. § 93-15-109 (Supp.1999).”
I. Termination of Parental Rights
¶ 11. When a child has been removed from the home of its natural parents and cannot be returned to that home within a reasonable length of time because returning to the home would be damaging to the child, Miss.Code Ann. § 93-15-103 (Supp.2003) provides, in pertinent part, the grounds for termination of parental rights:
(3) Grounds for termination of parental rights shall be based on one or more of the following factors:
(a) A parent has deserted without means of identification or abandoned a child as defined in Section 97-5-1, or
(b) A parent has made no contact with a child under the age of three (3) for six (6) months or a child three (3) years of age or older for a period of one (1) year; or
(c) A parent has been responsible for a series of abusive incidents concerning one or more children; or
(d)When the child has been in the care and custody of a licensed child caring agency or the Department of Human Services for at least one (1) year, that agency or the department has made diligent efforts to develop and implement a plan for return of the child to its parents, and:
(i) The parent has failed to exercise reasonable available visitation with the child; or
(ii) The parent, having agreed to a plan to effect placement of the child with the parent, fails to implement the plan so that the child caring agency is unable to return the child to said parent; or
(e) The parent exhibits ongoing behavior which would make it impossible to return the child to the parent’s care and custody ...:
(ii) Because the parent fails to eliminate behavior, identified by the child caring agency or the court, which prevents placement of said child with the parent in spite of diligent efforts of the child caring agency to assist the parent; or
(f) When there is an extreme and deep-seated antipathy by the child toward the parent or when there is some other substantial erosion of the relationship between the parent and child which was caused at least in part by the parent’s serious neglect, abuse, prolonged and unreasonable absence, unreasonable failure to visit or communicate, or prolonged imprisonment; or ...
(h) The child has been adjudicated to have been abused or neglected and custody has been transferred from the child’s parent(s) for placement pursuant to Section 43-15-13, and a court of competent jurisdiction has determined that reunification shall not be in the child’s best interest ...
(emphasis added).
¶ 12. Here, the removal of custody of the minor children by DHS occurred in 1999. At the time of the hearing on the termination of parental rights was held on January 30, 2002, May still had not completed the court-ordered counseling at GCMH. May supported her husband, King, in his criminal proceedings for the molestation of their 11 year old daughter. May testified at King’s bond hearing. More important, May testified at King’s criminal trial to discredit her daughter’s *79 testimony as to the molestation. May testified that her daughter had a tendency to lie. Medical documents demonstrated that the child’s hymenal ring was no longer intact and that this was inconsistent with that of a girl her age. Furthermore, the child provided graphic detailed accounts and description of the molestation which occurred over an approximate 2 $ year span of time. However, May acknowledged that she only believed her daughter years later for the first at the termination of parental rights hearing.
¶ 13. May, herself, had a history with the DHS involving 3 separate incidents of misusing corporal punishment. This resulted in May entering into a service agreement before the molestation charges came to light.
¶ 14. May had continued to maintain contact with King while in prison. However, at the time of the hearing, she testified that she had since severed contact with King, and she stated that she planned to get a divorce. She testified that her most recent visit in January 2002 was to ask King for a divorce. Of course, the custody of the minor children was taken away in 1999. She admitted that she had not filed for divorce at the time of the termination hearing. May justified the delay in seeking a divorce on her attempts to try to get her children back. However, subsequent to the hearing she did receive a divorce from King.
¶ 15. The youth court found: (1) “that the Minor Petitioners have been in the care and custody of a licensed child care agency, or the Harrison County Department of Human Services, for over a period of one (1) year;” (2) “that the Respondent, Glenda May, has been responsible for a series of abusive incidents concerning one or more children constituting grounds for termination of their (sic) parental rights pursuant to Miss.Code Ann. § 93-15-103(3)(c)(1972);” and (3) “that the Respondent, Glenda May, exhibits and has failed to eliminate ongoing behavior ... which prevents placement of the Minor Petitioners with said Respondent in spite of diligent efforts of the Department of Human Services to assist said Respondent constituting grounds for termination of their parental rights pursuant to Miss.Code Ann. § 93 — 15—103(3)(e)(ii)(l972).” The youth court further found “that there is a substantial erosion of the relationship between the Minor Petitioners and the Respondent, Glenda May, which was caused at least in part by said Respondent’s neglect, constituting grounds for termination of her parental rights pursuant to Miss.Code Ann. § 93-15-103(3)(f)(1972)
¶ 16. In S.R.B.R. v. Harrison County Dep’t of Human Services, 798 So.2d 437, 445 (Miss.2001), we affirmed the decision by the youth court to terminate parental rights. We found that: “The parents deny their children were sexually abused, and their siblings therefore neglected. Of their own violation they failed to comply with the single requirement of completing the counseling program required by the court.” We further held:
The fact that the mother, as the parents argue, “did not commit any offense,” is not the issue the lower court was required to address. The issue was whether the mother had complied with the court’s requirement to acknowledge the sexual abuse and successfully complete the particular program designated by the court. She did not.
Moreover, the trial court was justified in its determination that, because the mother allied herself with the perpetrator, she was thus unable to protect the children from further abuse.
Id. at 442 (emphasis added).
¶ 17. In S.R.B.R., we found that the Youth Court Judge Michael H. Ward *80 clearly stated that he disbelieved the parents’ testimony that Gulf Coast Mental Health Center (GCMH) could no longer help them with counseling. The trial judge ruled that failure to complete the plan, as they had agreed, was a determining factor in terminating of the parental rights. Id. at 444.
¶ 18. Similarly, in G.Q.A, 771 So.2d at 334, Youth Court Judge Michael H. Ward ordered the termination of parental rights based upon the parents’ failure to acknowledge that the child was intentionally abused and their refusal to participate in counseling. This Court affirmed the youth court’s decision finding substantial evidence supporting the abuse. Id. at 336. This Court concluded that: (1) the evidence supported that the abusive incidents occurred; (2) the parents refused to admit that any intentional abuse occurred; (3) the evidence supported a substantial erosion in the parent/child relationship; and (4) the child’s best interest was served by terminating parental rights and the child remaining in foster care. Id. at 331, 339.
¶ 19. Therefore, we find that May’s assignment of error is without merit. Substantial evidence exists to support the youth court’s finding that termination of parental rights was in the best interest of the children.
II. Durable Legal Custody
¶ 20. May contends that the youth court erred in not considering durable legal custody as an alternative to termination of parental rights. We do not agree. Durable legal custody was enacted by the Legislature to serve as an alternative to termination of parental rights. In re S.A.M., 826 So.2d 1266, 1278 (Miss.2002).
¶ 21. The durable legal custody statute, Miss.Code Ann. § 43-21-609 (Rev.2002), provides:
In neglect and abuse cases, the disposition order may include any of the following alternatives, giving precedence in the following sequence:
(a) Release the child without further action;
(b) Place the child in the custody of his parents, a relative or other person subject to any conditions and limitations as the court may prescribe. If the court finds that temporary relative placement, adoption or foster care placement is inappropriate, unavailable or otherwise not in the best interest of the child, durable legal custody may be granted by the court to any person subject to any limitations and conditions the court may prescribe; such durable legal custody will not take effect unless the child or children have been in the physical custody of the proposed durable custodians for at least one (1) year under the supervision of the Department of Human Services. The requirements of Section 43-21-613 as to disposition review hearings does not apply to those matters in which the court has granted durable legal custody. In such cases, the Department of Human Services shall be released from any oversight or monitoring responsibilities;
(c) Order terms of treatment calculated to assist the child and the child’s parent, guardian or custodian which are within the ability of the parent, guardian or custodian to perform;
(d) Order youth court personnel, the Department of Human Services or child care agencies to assist the child and the child’s parent, guardian or custodian to secure social or medical services to provide proper supervision and care of the child;
*81 (e) Give legal custody of the child to any of the following but in no event to any state training school:
(i) The Department of Human Services for appropriate placement; or
(ii) Any private or public organization, preferably community-based, able to assume the education, care and maintenance of the child, which has been found suitable by the court. Prior to assigning the custody of any child to any private institution or agency, the youth court through its designee shall first inspect the physical facilities to determine that they provide a reasonable standard of health and safety for the child.
(emphasis added).
¶ 22. However, the paramount concern in determining the proper disposition continues to be the best interest of the child, not reunification of the family. In re Beggiani, 519 So.2d 1208, 1213 (Miss.1988). See In re S.A.M., 826 So.2d at 1274, 1279 (durable legal custody was determined to be in the best interest of the child in order to allow continued DHS monitoring without the requirement of annual reviews and constant involvement by DHS). See also S.R.B.R., 798 So.2d at 444. Also, in G.Q.A., 771 So.2d at 336, we emphasized that the polestar consideration in determining disposition is the best interest of the child. Furthermore, in G.Q.A., a termination of a parental rights case, we stated that:
Congress recently enacted the Adoption and Safe Families Act of 1997 (ASFA), Pub.L. No. 105-89, 111 Stat. 2115 (1997), in order to increase the safety of children. In pursuing that goal, ASFA provides that “reasonable efforts” to reunite children with their parents “shall not be required ... if a court of competent jurisdiction has determined that (i) the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse).” 42 U.S.C.A. § 671(a)(15)(D)(i) (Supp.2000). Essentially, ASFA clarifies that a child need not be forced to remain in or be returned to an unsafe home and allows the States to place the safety and welfare of the child before the interest of abusive parents.
771 So.2d at 335 (emphasis added).
¶ 23. In S.A.M., 826 So.2d at 1278, Youth Court Judge Michael H. Ward’s granted durable legal custody of S.A.M. to her long-time foster parents subject to supervised visitation with the mother rather than returning the child to her mother. Id. The mother argued that granting durable custody to the foster parents amounted to terminating her parental rights. Id. at 1278. The mother also argued that the youth court should have made attempts to reunify her and her child before granting durable legal custody. Id. at 1274. In affirming Judge Ward’s decision, this Court stated:
The fact that under durable legal custody the parent retains some form of residual rights and responsibilities is a vital and obvious distinction to termination of parental rights. Another distinction is that a decision to grant durable legal custody is not permanent and is, therefore, subject to further review and modification by the courts.
Id. at 1279.
¶ 24. Here, the youth court stated in its judgment terminating parental rights that “a court of component jurisdiction has determined that reunification shall not be in the Minor Petitioners’ best interest, constituting grounds for termination of their pa *82 rental rights pursuant to Miss.Code Ann. § 93-15-103(3)(h)(1972).” The youth court also found that the children “had been in the care and custody of a licensed child caring agency, or the Harrison County Department of Human Services, for a period of one year.” The youth court specifically addressed the alternative placement of durable legal custody during final arguments. The youth court stated that “you can’t have a durable legal custodian unless the people have had custody for a year.” The youth court concluded that this was not the case under the facts at bar as May had not had custody of her children since June 11, 1999. Miss.Code Ann. § 43-21-609(b) specifically and clearly provides that in order to have the disposition alternative of durable legal custody in cases of abuse or neglect, the child or children must have been in the physical custody of the proposed durable custodians for at least 1 year under the supervision of the Department of Human Services.
¶ 25. Therefore, we find no merit to May’s assignment of error that the youth court did not consider the alternative disposition of durable legal custody
CONCLUSION
¶ 26. Therefore, for all the foregoing reasons, we affirm the decision of the Youth Court of Harrison County terminating May’s parental rights.
¶ 27. AFFIRMED.
SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.

. The accusations of molestation was solely as to the female minor child.

. King's motion for rehearing on his appeal was subsequently denied on January 29, 2002. King, a Captain Reserve Officer with the City of Gulfport Police Force, was indicted for sexual battery, capital rape and statutory rape of his 11 year old daughter. The victim testified that she was forced to have oral and vaginal intercourse over a period of more than 2 years. The victim's pediatrician had first noticed the victim’s hymenal opening being wider than normal for a girl that age in May of 1997. Another general physician examined the victim on June 4, 1999, and concluded that her hymenal ring was no longer intact. The victim had a psychological examination that resulted in findings consistent with sexual abuse. In the psychological examination, she described her father’s penis and semen in detail and stated that he placed "his penis in her vagina and made me suck his private or suck his nipple.” See May, 806 So.2d at 316.

. As stated in her brief, May does not dispute that at the time of the termination hearing she had not completed the court ordered counseling at GCMH. Her position is that she did not like receiving counseling at GCMH.

. Subsequent to the termination hearing, May did file and receive her divorce from King and complete the classes at GCMH.