938 So.2d 829 (2006)
In re V.M.S., a Minor.
No. 2005-CA-01081-SCT.
Supreme Court of Mississippi.
September 28, 2006.
*830 John R. Reeves, attorney for appellant.
Office of the Attorney General by Chadwick Dale Montgomery, attorney for appellee.
EN BANC.
CARLSON, Justice, for the Court.
¶ 1. Aggrieved by the Lowndes County Youth Court's judgment terminating her parental rights to her minor child, the natural mother appeals to us seeking relief. Finding error in the youth court judge's decision to terminate the natural mother's parental rights, we reverse the youth court's final judgment and remand this case to the Lowndes County Youth Court for further proceedings consistent with this opinion.

FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 2. The Lowndes County Department of Human Services (LCDHS) petitioned the County Court of Lowndes County, Youth Court Division, to terminate the parental rights of T.S.T. (Tonya) and "Unknown Putative Father"[1] with respect to V.M.S. (Valerie), a minor child who was in the custody of LCDHS at the time the petition was filed on October 3, 2002.[2] The child had been in the custody of the LCDHS since approximately May 4, 2000, when the child was five years old. The petition cited as its authority the Termination of Rights of Unfit Parents Law, Miss.Code Ann. §§ 93-15-101 et seq., and based its demand for judgment on the mother's absence and neglect, her diagnosable drug addiction, her failure to implement a plan for the child's return, her failure to exercise reasonable available visitation, a substantial erosion of the relationship between the mother and the child, and other ongoing *831 behavior preventing placement of the child with the mother. Additionally, the petition stated that the child had been adjudicated to be abused or neglected by a court which determined that reunification was not in the child's best interest. Tonya filed her answer, which was in essence a general denial, but she admitted that a guardian at litem should be appointed pursuant to Miss.Code Ann. § 93-15-107. During proceedings held on May 1, 2003, the trial judge stated that many of the allegations in the petition were true but that no testimony had been presented to show a substantial erosion of the parent-child relationship or to show any deep-seated antipathy on the part of the child toward the mother. Reviewing the petition and the testimony, the trial court found Tonya's parental rights should not be terminated and on December 10, 2003, entered its order accordingly. However, the trial court did terminate the father's parental rights in that same order and additionally found that the child should not be in the mother's care, though visitation with the mother remained a possibility. LCDHS was awarded full custody; however, visitation was only to be afforded to Tonya at the request of Valerie.
¶ 3. The LCDHS filed a motion under Miss. R. Civ. P. 60(b)(3) for relief from the judgment of December 10, 2003.[3] Thereafter, several motions were filed and heard by the trial court. Tonya filed a Motion for Dispositional Review of the case, requesting custody be returned to her. Tonya also filed a Motion for Immediate Visitation and Other Relief stating she was married, drug-free, operating her own business, and in a stable home. She also filed a Motion for Placement of Child in a Different Foster Home. Tonya argued that LCDHS was intentionally frustrating her attempts to be reunited with her child by placing the child in a home more than an hour away from her mother. LCDHS requested the Motion for Dispositional Review be denied. The response from LCDHS to the Motion for Immediate Visitation alleged that the child never requested visitation from the mother, a requirement placed on this conditional visitation by the earlier court order. Thus, the trial court denied Tonya's motion for visitation, but also ordered the child examined by a psychologist. In response to Tonya's motion requesting a new foster home for Valerie, LCDHS pointed out that, after living in several different foster homes, Valerie was happy with the current situation and her current foster parents.
¶ 4. On October 21, 2004, the trial court conducted a hearing on the LCDHS Rule 60(b)(3) motion for relief from the earlier order denying the petition to terminate Tonya's parental rights. The hearing was also held to assist the trial court in disposing of Tonya's Motion for Dispositional Review and Motion for Placement of Child into a Different Foster Home. The trial court heard testimony from the child's mother and the child's foster mother. The trial judge stated that she was also planning on considering other exhibits and evidence, such as a drug screen, the court-ordered psychological report, and testimony from the child, both oral and in the form of short letters expressing the child's wish to stop moving around so often and remain with her current foster parents. The testimony of the child had been presented to the trial court on August 11, 2004, at a hearing on Tonya's Motion for Visitation and Other Relief. After considering the evidence presented at the hearing and the additional exhibits an testimony, the trial court entered its order on *832 January 12, 2005, and granted the LCDHS motion for relief, awarding custody to LCDHS, denying all other motions before the court, and terminating Tonya's parental rights. The trial court based its decision in part on the August 11, 2004, testimony of the child.
¶ 5. Tonya's attorney never received notice of the trial court order of January 12, 2005, and the time to file her notice of appeal expired. Tonya therefore filed a motion for reopening time for appeal. On May 12, 2005, the trial court granted the order under the authority of M.R.A.P. 4(h). Tonya appeals now from the trial court's final judgment of January 12, 2005. LCDHS also filed a notice of an appeal from the trial court's judgment allowing Tonya to in essence an out-of-time appeal. However, LCDHS never filed a cross-appellant's brief and wholly failed in its appellee's brief to address the issues or the judgment which were the subject matter of its notice of appeal; thus, we are faced only with Tonya's appeal and the issues she raises.[4] The central issues are whether clear and convincing evidence existed to support the trial court's decision to terminate Tonya's parental rights and whether that evidence could not have been discovered by due diligence in time to file a motion for a new trial.

DISCUSSION
¶ 6. We review the termination of parental rights to a minor child applying a "clear and convincing evidence" standard, thus applying a "clearly erroneous/manifest error" standard of review. G.Q.A. v. Harrison County Dep't of Human Resources, 771 So.2d 331, 334-35 (Miss.2000). In G.Q.A., we stated:
A Family Court judgment concerning termination of parental rights will be reviewed under the same standard as a Chancery Court judgment, which is clear and convincing evidence. See Miss.Code Ann. § 93-15-109 (Supp. 1999). Therefore, we review this case under our familiar clearly erroneous/manifest error standard. Although both courts are vested with the power to determine whether parental rights should be terminated, it is important to note that the chancery court derives its jurisdictional authority from Mississippi's Constitution of 1890 while the Family Court is a creature of statute. See Miss. Const. art. 6, § 159; Miss.Code Ann. § 93-15-105 (1996). The Family Court's decision will be upheld unless this Court finds it to be unsupported by substantial, credible evidence, giving deference to the Family Court's findings of fact. S.C.R. v. F.W.K., 748 So.2d 693, 700 (Miss.1999).
771 So.2d at 334-35. Once that burden is met, the best interest of the child is the paramount consideration. Lauderdale County Dep't of Human Servs. v. T.H.G., 614 So.2d 377, 385 (Miss.1992) (citing Petit v. Holifield, 443 So.2d 874, 877 (Miss. 1984)). With this in mind, we now consider Tonya's issues raised on appeal.
I. WHETHER THE LOWNDES COUNTY DEPARTMENT OF HUMAN SERVICES' RULE 60(b)(3) MOTION WAS PROPERLY BEFORE THE TRIAL COURT IN THAT IT WAS SUPPORTED BY NEWLY DISCOVERED EVIDENCE
¶ 7. Mississippi law lists "an extreme and deep-seated antipathy by the child *833 toward the parent or . . . some other substantial erosion of the relationship between the parent and child which was caused . . . by the parent's . . . prolonged and unreasonable absence" as one reason to overcome the strong presumption in favor of parental rights. Miss.Code Ann. § 93-15-103(3)(f). The initial trial court determination that the parental rights of the mother should not be terminated was based on the lack of evidence of any substantial erosion of the parent-child relationship or any deep-seated antipathy toward the mother by the child. Upon granting the LCDHS Motion for Relief from Judgment, the trial judge referred to the August 11, 2004, testimony of the child as her basis for finding that the parent-child relationship had been severed, granting the motion, and terminating the mother's parental rights. The trial judge found that the evidence was newly discovered and could not have been discovered in time for LCDHS to file a motion for a new trial, and that the evidence satisfied the requirements of Section 93-15-103(3)(f), showing a substantial erosion in the relationship between the mother and the child.
¶ 8. Miss. R. Civ. P. 60(b)(3) affords relief from a final judgment where just and upon a motion if there is "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Tonya argues now that the only basis for the trial court's decision was the interview the youth court judge conducted with the child on August 11, 2004, at the hearing on the mother's Motion for Immediate Visitation and Other Relief. Additionally, Tonya argues the record is devoid of any evidence which could have been newly discovered as to satisfy the rule. The Rule 60 motion was filed by the LCDHS on April 16, 2004, before the interview with the child had taken place. Tonya argues that because the trial court's interview with the child did not occur until almost four months after the filing of the motion purportedly based on new evidence, the motion was not properly before the court and should not have been granted. We agree.
¶ 9. LCDHS, in filing the Rule 60(b)(3) motion, neither presented nor described any new evidence which would entitle the agency to relief from the trial court's judgment. The only new evidence to support a grant of relief from judgment was to be presented at the subsequent hearing. At the hearing, testimony was received from Tonya and Valerie's foster mother, as well as Valerie's testimony elicited at a hearing a few months before the hearing, which testimony was incorporated into the trial transcript. In considering the motion, the trial judge was also presented with other exhibits and evidence, such as a drug screen, the court-ordered psychological report, and testimony from Valerie. This "new" evidence purportedly showed a deterioration of the relationship between Valerie and Tonya to the point that the evidence merited the relief from judgment and termination of Tonya's parental rights. The order entered by the trial court was not accompanied by any detailed findings of fact or conclusions of law. After a thorough review of the record, we have struggled with how the trial judge found the evidence to be "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Miss. R. Civ. P. 60(b)(3).
¶ 10. Tonya argues that the newly discovered evidence must have existed at the time of trial for LCDHS to be entitled to relief. The text of the rule itself does not require that the evidence must have existed at the time of trial; only that the newly discovered evidence was such that it "by due diligence could not have been discovered *834 in time to move for a new trial." Id. (emphasis added). However, this Court has deemed a similar argument in support of a grant of relief from judgment under Rule 60(b)(3) to fail when it relies on evidence that did not exist at the time of trial. Gray v. Gray, 562 So.2d 79, 82 (Miss.1990). In Gray, we looked to the federal interpretation of Fed.R.Civ.P. 60(b)(2), which is the identical federal counterpart to our state rule. Id. This argument, quite curiously, led to a response on appeal by the LCDHS that "all of the events disclosed by the minor child and the newly discovered evidence obtained supporting the . . . motion . . . occurred prior to the filing of any termination proceedings in the County Court of Lowndes County." The LCDHS also points out that indications were such that a deep-seated antipathy of the child towards the mother had existed well before any proceedings in any court. Interestingly, LCDHS in essence fully admits on appeal through these counter-arguments that all of its evidence existed well before any proceedings begun, and thus could not have been "newly discovered," yet the LCDHS moved for relief from judgment under a rule which by its very nature does not contemplate relief based on such evidence. The actual interview the trial judge conducted with the child was obviously not the basis for the LCDHS motion at the time of filing as that interview did not take place until much later and therefore did not exist at the time of trial. The subject matter of that interviewthe child's feelings about her mothercould also not have been newly discovered evidence as the LCDHS itself admits that those feelings had existed well before trial and therefore could have easily been discovered in time for the LCDHS to move for a new trial. Under both Gray and Miss. R. Civ. P. 60(b)(3), the facts of this case do not merit terminating the mother's parental rights. None of this evidence was either newly discovered or of the sort that it could not have been discovered in time to move for a new trial. Accordingly, we find this issue assigned by Tonya to have merit, thus requiring reversal.
II. WHETHER THE DECISION BY THE LOWER COURT TO TERMINATE THE PARENTAL RIGHTS OF THE MOTHER WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE
¶ 11. The law leaves no room for doubt as to what is required in a case involving termination of parental rights. "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." Santosky v. Kramer, 455 U.S. 745, 748, 102 S.Ct. 1388, 1391-92, 71 L.Ed.2d 599 (1982) (finding that a "fair preponderance of the evidence" standard was inadequate when reviewing such a fundamental liberty interest). Indeed, this is exactly what the Termination of Rights of Unfit Parents Law requires. The trial judge must be satisfied by clear and convincing proof that the mother was within the grounds laid out within the statute requiring termination of her parental rights. Miss.Code Ann. § 93-15-109. Also, under Mississippi law a strong presumption exists that the natural parent should retain his or her parental rights. See, e.g., Lauderdale County Dep't of Human Servs. v. T.H.G., 614 So.2d 377, 385 (Miss.1992) (recognizing Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Terminating those rights requires overcoming that strong presumption with clear and convincing evidence. Even the trial judge, in her initial determination that the parental rights should not be terminated, likened *835 such a ruling to the death penalty. The trial court, at that proceeding, found no existence of "an extreme and deep-seated antipathy by the child toward the parent or . . . some other substantial erosion of the relationship between the parent and child which was caused . . . by the parent's . . . prolonged and unreasonable absence," and could find no reason to overcome that strong presumption. Miss. Code Ann. § 93-15-103(3)(f). On the other hand, LCDHS argues here on appeal that this statutory requirement was proven at the hearing as revealed in the transcript.
¶ 12. LCDHS, as well as Valerie's foster family, desire for the child to be adopted by the foster family, and are pursuing the termination of Tonya's parental rights to achieve that end. The statute contemplates such a situation.
When a child has been removed from the home of its natural parents and cannot be returned to the home of his natural parents within a reasonable length of time because returning to the home would be damaging to the child or the parent is unable or unwilling to care for the child, relatives are not appropriate or are unavailable, and when adoption is in the best interest of the child, taking into account whether the adoption is needed to secure a stable placement for the child and the strength of the child's bonds to his natural parents and the effect of future contacts between them, the grounds listed in subsections (2) and (3) of this section shall be considered as grounds for the termination of parental rights. The grounds may apply singly or in combination in any given case.
Miss.Code Ann. § 93-15-103(1). Tonya's history, including years before and after Valerie's birth is in fact fraught with situations less than ideal for rearing a child, including Tonya's drug abuse and sexual promiscuity in Valerie's presence. This has had without doubt an adverse effect on the child and the trial court was not blind to that fact; however, with an eye toward the measures the trial judge put in place in her initial order and the rehabilitation the mother has successfully pursued, we are constrained to find that the facts are not sufficient to undergird the trial court's ultimate decision to terminate Tonya's parental rights with Valerie. Based on the turbulent childhood Valerie has experienced, the trial court decided to not grant the mother custody or even visitation rights without visitation being requested by the child. In fact, at the May 1, 2003, proceedings, the trial judge stated that many of the allegations in the petition were true, including those which could have been found as grounds to terminate parental rights under the statute. However, the result of the then-truth of those allegations was the denial of granting the mother custody or free visitationnot the termination of her parental rights. The trial judge ruled that no testimony had been presented at those proceedings to show a substantial erosion of the parent-child relationship or to show any deep-seated antipathy on the part of the child toward the mother. This holding would likewise not grant custody or automatic visitation rights to the mother, but simply prevent the mother's parental rights from being terminated only because of the current situation the foster parents provide the child. Since the commencement of these proceedings in the trial court, Valerie has lived in several foster homes, unhappily moving from home to home, but has now ended up in her current foster home where she is comfortable and adjusting well to her life. This however is still inadequate alone to support a termination of the mother's parental rights. "'The best interest of the child is a polestar consideration in the granting of any adoption.' It is a *836 consideration, but this Court has never allowed termination of parental rights only because others may be better parents." M.L.B. v. S.L.J., 806 So.2d 1023, 1029 (Miss.2000) (quoting In re Adoption of J.J.G., 736 So.2d 1037, 1038 (Miss.1999)).
¶ 13. The typical cases where we have found a substantial erosion in a parent-child relationship are far more extreme than the one presented to us today. In May v. Harrison County Dep't of Human Servs., 883 So.2d 74 (Miss.2004), the mother breached an agreement with the DHS by failing to attend parenting and counseling classes, and continued to have contact with her husband after his conviction of sexual battery of their 11-year-old daughter, resulting in a substantial erosion of the relationship between the mother and the three children, whom the DHS had removed from the mother's home after the husband was charged in the crime. That erosion constituted grounds for termination of her parental rights pursuant to Miss.Code Ann. § 93-15-103(3)(f). Id. at 76-77, 79.
¶ 14. In G.Q.A., the evidence supported a determination that there had been a substantial erosion of the parent-child relationship resulting from what the trial judge called the worst case of child abuse ever to pass before his bench, the facts of which included waiting more than a week to seek medical attention from a hospital to treat-third degree burns on an eighteen-month-old baby incurred during a scalding bath. 771 So.2d at 332. The time that passed between the burns and treatment resulted in a bacterial infection which caused abscesses on areas of the baby's body which were unaffected by the initial burns. Id. The severity of the burns resulted in a cardiac condition. Id. at 333. The child had also been severely malnourished for several months, having the height and weight of an eight month old. The child had hair loss, loose teeth, and swollen and bleeding gums, as well as disfigurement from the wounds and infection. Id. Notwithstanding the parents' contention that they had continuously sought and exercised visitation, but were restricted by court order to only limited, supervised visitation, the court found a substantial erosion in the relationship resulting from the physical abuse. Id. at 338.
¶ 15. However, this Court has also been presented with situations where it was improper to terminate parental rights based on the facts before us. In M.L.B. v. S.L.J., we found that there was insufficient evidence to support the chancellor's termination of a mother's parental rights on the ground of a substantial erosion of the relationship. 806 So.2d at 1029. Although the mother's visits with her children were infrequent, it was not shown that the mother wished to abandon or desert her children. Id. at 1027. To abandon would have meant to forego all duties or to relinquish all parental claims to the children and her conduct did not imply a conscious disregard of all the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship. Id.
¶ 16. In Vance v. Lincoln County Dep't of Pub. Welfare ex rel. Weathers, 582 So.2d 414, 416 (Miss.1991), we found the evidence sufficient to support a finding of a substantial erosion of the relationship between two children and their mother, who was incarcerated for murder and armed robbery and later for aggravated assault of a correctional officer while incarcerated. In Vance, one of the children testified that he had not seen his mother for five years though he had written to her and talked with her on the phone and he seemed anxious to be adopted by someone, and the other child evidently had no memory of her mother since she was only two years old when she was separated from her *837 mother. Id. at 418. The trial judge found the already-bad relationship eroded to one that was practically non-existent, and this Court refused to hold that the trial court's finding of a substantial erosion was manifestly wrong. Id. Under the circumstances it appeared that no viable alternative to termination was available to the court. Id. The record supported a finding of serious neglect by the mother and the mother's conduct resulted in consequences tantamount to abandonment. Id.
¶ 17. Returning to the facts of today's case, Tonya no doubt has a history of drug abuse and addiction and has been diagnosed as bi-polar. However, testimony was presented to show her pursuit of regular treatment, her dedicated regimen of medication, and her sobriety for several years prior to the hearing. Evidence of these facts included drug screening reports showing her sobriety over the previous several years and improvement with her bi-polar disorder through medication and psychiatric care. From the record in this case, we are unconvinced that the evidence presented by LCDHS was clear and convincing to overcome the strong presumption of retaining parental rights in Tonya's favor or to show "an extreme and deep-seated antipathy by the child toward the parent or . . . some other substantial erosion of the relationship" between the two. Miss.Code Ann. § 93-15-103(3)(f). It is thus clear that for parental rights to be terminated under § 93-15-103(3)(f), any antipathy or erosion of the relationship must be "caused at least in part by the parent's serious neglect, abuse, prolonged and unreasonable absence, unreasonable failure to visit or communicate, or prolonged imprisonment." Id. Here, the circumstances of the case wholly fail to rise to such a level required by the statute to necessitate terminating Tonya's parental rights to Valerie. Though Tonya may not be fit to be awarded custody, the termination of her parental rights is inappropriate and is not justified from the record before us and the applicable law. Testimony at the motion hearing, as well as evidence within the entire record, is certainly not lacking as to the mother's rehabilitation efforts and that she in fact makes efforts to maintain contacts with her daughter by, among other things, writing her letters twice a week and sending her Christmas presents. The trial court's decision to terminate Tonya's parental rights is not supported by substantial, credible evidence. G.Q.A., 771 So.2d at 335. We thus likewise find this issue raised by Tonya to have merit.
¶ 18. Tonya also raises these additional issues: III. Whether visitation between the mother and the child should have been allowed and whether, if allowed, the visitation should have been restricted; IV. Whether the trial court failed to make findings of fact and conclusions of law which were supported by credible evidence and not manifestly wrong; V. Whether the trial court failed to correctly implement the proper statutory procedures.
¶ 19. However, based on our disposition of the issues already discussed, we deem it unnecessary to address these remaining issues. Instead, inasmuch as we have determined that the trial court committed error in terminating Tonya's parental rights to Valerie, we deem it appropriate, based on the passage of time since the last trial court adjudication, to remand this case to the Lowndes County Youth Court to revisit the issue of visitation between Tonya and Valerie. Notwithstanding our remand for this purpose, we in no way make any inference as to the appropriate decision concerning visitation. Whether Tonya is even afforded visitation with Valerie, and if so, to what extent and on what terms, is a decision quite appropriately left *838 to the trial judge on the scene. See Culbreath v. Johnson, 427 So.2d 705, 708 (Miss.1983).

CONCLUSION
¶ 20. For the reasons discussed, we reverse the Lowndes County Youth Court judgment terminating Tonya's parental rights to Valerie, and we remand this case to the Lowndes County Youth Court for further proceedings consistent with this opinion.
¶ 21. REVERSED AND REMANDED.
SMITH, C.J., WALLER, P.J., DIAZ, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., EASLEY AND GRAVES, JJ., NOT PARTICIPATING.
NOTES
[1] Social worker Debbie Sturgis stated in an affidavit pursuant to Miss.Code Ann. § 93-15-105(1) and Miss. R. Civ. P. 4 that the unknown putative father could not be found in Mississippi through diligent inquiry and that his post office address was unknown to the parties. The trial court found the father deserted without means of identification or abandoned the child, thus constituting grounds for termination of his parental rights.
[2] Since a minor child is involved, fictitious names are used for the natural mother and the minor child in order to maintain confidentiality. Also, the child's mother, the appellant here, was named differently in the original petition, but in her subsequent pleadings filed in this case, she used a name other than the name used by LCDHS in its initial petition.
[3] Approximately one year later, the trial court would grant this Rule 60(b)(3) motion, based on a finding of newly-discovered evidence which could not have been discovered through due diligence in time to file a motion for a new trial.
[4] As to LCDHS's notice of appeal, we are not required to consider an argument not brought forward in an appellate brief and not supported with citation to authority in support of the argument. Melton v. State, 723 So.2d 1156, 1159 (Miss. 1998) (citing Grey v. Grey, 638 So.2d 488, 491 (Miss.1994)). See also Cook v. Mardi Gras Casino Corp., 697 So.2d 378, 382 (Miss. 1997).