942 So.2d 266 (2006)
In re S.T.M.M., a Minor.
In re S.S.A.R., a Minor.
In re C.A.R., Jr., a Minor.
In re T.T.T.M., a Minor.
Nos. 2005-CA-01283-COA to 2005-CA-01286-COA.
Court of Appeals of Mississippi.
November 14, 2006.
*267 Sheila Havard Smallwood, attorneys for appellant.
Sara Barrett Harvey, attorneys for appellee.
Before KING, C.J., CHANDLER and ROBERTS, JJ.
ROBERTS, J., for the Court.
¶ 1. This case is an appeal of a termination of parental rights. Following allegations of neglect, the mother's four children were removed from her custody, and she entered into an agreement with the Department of Human Services that stipulated those tasks she would have to complete to reunite her family. After over a year and a half, and several review hearings tracking her progress, or lack thereof, it was determined that the mother had failed to comply with the agreement, and, coupled with the lack of any clean drug test, the mother's parental rights were terminated. She now appeals.

FACTS AND PROCEDURAL HISTORY
¶ 2. A.E.R. is the natural mother of the four minor children at the heart of this appeal, namely S.T.T.M., T.T.T.L.M., C.A.R., Jr., and S.S.A.R. T.T.T.L.M., C.A.R., Jr., and S.S.A.R. came into the custody of the Forrest County Department of Human Services (DHS) on June 26, 2003, by orders of the County Court of Forrest County, Youth Court Division granting temporary custody as a result of alleged neglect and/or abuse. S.T.T.M. came into the custody of DHS on August 4, 2003, under identical circumstances. Within each child's neglect and abuse petition, the DHS stated that the Department of Human Services in Texas was investigating A.E.R. regarding drug use and unsupervised children. The Texas DHS informed the DHS that A.E.R. had a history of drug use, physical neglect, and physical abuse. On May 23, 2003, prompted by the information above, a social worker, Lisa Simpson, performed a courtesy interview of A.E.R.'s home and found no reason to remove the children from A.E.R.'s custody. Less than a month later, based on reports of uncontrolled fighting, another interview was performed. This visit revealed the deplorable conditions in which the children lived and the presence of extreme bug bites and head lice affecting each child. Subsequent to this discovery, DHS received a report from the children's guardian ad litem from Texas indicating that A.E.R. had tested positive for cocaine and marijuana. A hearing was held in which each child was adjudicated neglected within the meaning given in the Youth Court Act of the State of Mississippi, Section 43-21-105 of the Mississippi Code Annotated (Rev.2004). As such, DHS was given legal custody of each child in orders filed on August 21, 2003.
*268 ¶ 3. On June 27, 2003, A.E.R. and DHS entered into a service agreement with the goal of allowing A.E.R. to adequately provide for her children and regain custody. The service agreement stipulated that A.E.R. was to complete a psychological evaluation, individual and family counseling, parenting classes, anger management classes, obtain and maintain housing and employment, receive random drug screens (at A.E.R.'s expense), outpatient drug treatment, and maintain regular visitation with her children. Simpson, the social worker initially assigned to A.E.R.'s case, was responsible for making referrals for parenting classes, anger management classes, counseling, and arranging visitation. A permanency order was entered on November 18, 2003, as to each child, in which the youth court found that A.E.R. had moved to Mississippi in order to avoid Texas DHS jurisdiction, and, as a result of other evidence presented, referred each child for termination of parental rights. Three review hearings were held throughout 2004 in which the lower court found that DHS had made reasonable efforts to reunite A.E.R. with her children, and the best interests of the children required DHS to retain custody. As early as the March 9, 2004 review hearing, the court noted that it was apparent, despite DHS's efforts, little or no actual progress had been made, and the County Court of Forrest County, Youth Court Division, ordered that DHS was not required to make any further efforts to assist A.E.R. in complying with the service agreement as a result of her lack of improvement or a clean drug test.
¶ 4. A hearing was held on November 23, 2004, in order to determine if A.E.R.'s parental rights would be terminated as to her four children. At the start of the hearing, A.E.R.'s attorney presented to the court a motion ore tenus for a continuance, which was subsequently denied. At the conclusion of the hearing, and after considering the facts before it, the Forrest County Youth Court issued its final judgment(s) terminating the parental rights of A.E.R. as to C.A.R., Jr., S.S.A.R., S.T.M.M., and T.T.T.L.M. This appeal followed, and A.E.R. raised the following issues:
I. The youth court judge erred in finding that proof met the clear and convincing burden of proof necessary to terminate the parental rights of the appellant.
II. Did the Forrest County Department of Human Services fail to follow its mission statement to provide services and reunite the family?
III. Did the youth court judge err in failing to grant the motion for continuance prior to the trial on the merits?
IV. Was the services agreement economically unreasonable with respect to its terms and conditions?

STANDARD OF REVIEW
¶ 5. While the basis for terminating parental rights is clear and convincing evidence, on appeal, our standard of review dictates that we may reverse the decision of the youth court "only if reasonable men could not have found as the youth court did beyond a reasonable doubt." May v. Harrison County Dep't of Human Servs., 883 So.2d 74(¶ 10) (Miss.2004). Additionally, where no jury was involved, the lower court's factual determinations will only be disturbed if the record lacks substantial supporting evidence. Id. Substantial evidence is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." G.Q.A. v. Harrison County Dep't of Human Servs., 771 So.2d 331(¶ 15)(Miss.2000) (quoting Hooks v. George County, 748 So.2d 678(¶ 10)(Miss.1999)).

*269 ANALYSIS
I. Whether the youth court erred in terminating A.E.R.'s parental rights.
¶ 6. Mississippi Code Annotated § 93-15-103 (Rev.2004) provides, in pertinent part,
(1) When a child has been removed from the home of its natural parents and cannot be returned to the home of his natural parents within a reasonable length of time because returning to the home would be damaging to the child or the parent is unable or unwilling to care for the child, relatives are not appropriate or are unavailable, and when adoption is in the best interest of the child, . . ., the grounds listed in subsections (2) and (3) of this section shall be considered as grounds for the termination of parental rights. The grounds may apply singly or in combination in any given case.
. . . .
(3) Grounds for termination of parental rights shall be based on one or more of the following factors:
. . . .
(d) When the child has been in the care and custody of a licensed child caring agency or the Department of Human Services for at least one (1) year, that agency or the department has made diligent efforts to develop and implement a plan for return of the child to its parents, and:
. . . .
(ii) The parent, having agreed to a plan to effect placement of the child with the parent, fails to implement the plan so that the child caring agency is unable to return the child to said parent; or
(e) The parent exhibits ongoing behavior which would make it impossible to return the child to the parent's care and custody:
(i) Because the parent has a diagnosable condition unlikely to change within a reasonable time such as alcohol or drug addiction . . .; or
(ii) Because the parent fails to eliminate behavior, identified by the child caring agency or the court, which prevents placement of said child with the parent in spite of diligent efforts of the child caring agency to assist the parent; . . .
¶ 7. The facts of the case sub judice show that A.E.R. tested positive for cocaine and marijuana at the outset of the involvement of DHS on or around August 13, 2003. While the service agreement entered into by A.E.R. and DHS required her to take random drug tests throughout her period of review, the record indicates that she failed to take a single drug test. At the November 2004, hearing, she explained that the reason she had failed to take a drug test was that she could not afford to as her income, at least at the time of the hearing, was $500 per month. This excuse was lackluster at best as Josie Brown, the social worker then assigned to A.E.R.'s case, testified that she informed A.E.R. the day of the hearing that DHS would pay for a drug test if she took one that day, but A.E.R. refused, stating that she would test positive. A.E.R. explained that she believed she would test positive as a result of one "hit" she took off a marijuana cigarette while drinking at a friend's house. Notwithstanding A.E.R.'s explanation, the youth court judge was left with a parent who tested positive for drug use at the outset of DHS's involvement and admitted she would test positive at the hearing to determine if her parental rights would be terminated. Given that factual scenario, we find that reasonable men could have found beyond a reasonable doubt that termination was appropriate *270 under Mississippi Code Annotated Section 93-15-103(3)(e) (Rev.2004).
¶ 8. While not explicitly stated in the lower court judgments terminating parental rights, we also find that termination was appropriate under Mississippi Code Annotated Section 93-15-103(3)(d)(ii) (Rev. 2004). The record shows that T.T.T.L.M., C.A.R., Jr., and S.S.A.R. came into the custody of DHS on June 26, 2003. S.T.T.M. followed on August 4, 2003. At the time of the hearing, the children had been in the care and custody of DHS for well over the statutorily mandated time period of one year, thus satisfying the first requirement of Section 93-15-103(3)(d). Secondly, A.E.R. entered into a service agreement, or plan, in which she agreed to fulfill certain requirements. As the testimony from the November 2004 hearing shows, A.E.R. failed to complete those requirements. As per the service agreement, A.E.R. was to participate in a physiological evaluation. She failed to do this, explaining that she could not afford a $1,000 cost. While A.E.R.'s failure to meet this requirement is not, in and of itself, troubling, given the cost of the service relative to her level of income, her own testimony indicates that she had not even attempted to comply, testifying that at the time of the hearing she had saved nothing towards the evaluation.
¶ 9. Many other requirements of the service agreement were also not completed, to include drug tests, parenting classes, and anger management classes. A.E.R. explained that her inability to complete parenting classes or anger management classes was a result of her lack of transportation, money for gasoline, and scheduling conflicts between the classes and her job(s). Given the time frame A.E.R. had to complete the requirements, almost a year and a half, we find this excuse lacking as well. DHS provided these classes free of charge to A.E.R. with the only real requirement being she attend the classes. She failed to do this despite enrolling in four separate classes.
¶ 10. Another requirement of the service agreement was that A.E.R. maintain regular visitation with her children. Brown testified that A.E.R. visited T.T.T.L.M. and S.T.M.M. once in May of 2003, and visited S.S.A.R. and C.A.R., Jr. twice in August 2004 and once in October 2004. While A.E.R. testified she thought she visited her children more often, the frequency of A.E.R.'s visits can hardly be considered to be "regular visitation." Given the facts above, we find that there was clear, convincing, and substantial evidence to justify termination of A.E.R.'s parental rights under either Mississippi Code Annotated Sections 93-15-103(3)(e) or XX-XX-XXX(3)(d)(ii) (Rev.2004).
II. Whether the DHS failed to follow its mission statement.
¶ 11. A.E.R. next argues that "[t]he Department failed to implement a reasonable plan or optimize any resource to assist in the reunification of this family . . .", in accordance with its mission statement. Based on the facts enumerated above, and the lower court's findings at each review hearing, we find that DHS made every effort to assist A.E.R. to reunite her family under conditions that would promote the children's safety and well being. As such, this issue is without merit.
¶ 12. We also note that the lower court and DHS gave more time to comply with the service agreement than what the applicable statute allowed. Mississippi Code Annotated § 43-15-13(4) (Rev.2004) states, in pertinent part, that "the child's natural parent(s) will have a reasonable time to be determined by the court, which shall not exceed a six-month period of time, in which to meet the service agreement" *271 before termination of parental rights can be initiated. A.E.R. had well over one year to complete the requirements, and in that time she failed to not only complete the requirements, but failed even to make any notable progress toward completion.
III. Whether the youth court erred in failing to grant A.E.R.'s motion for continuance.
¶ 13. A.E.R. next argues that she was making progress towards completion of her service agreement in that she was currently employed and enrolled in anger management and parenting classes, and given more time she could have completed the service agreement requirements. Whether to grant or deny a motion for continuance is a decision left to the discretion of the trial judge, and should not be reversed unless a manifest injustice occurred as a result of the decision. Stack v. State, 860 So.2d 687(¶ 7)(Miss.2003). While A.E.R.'s "progress" towards completion of the service agreement was technically true at the time of denial of her motion, she failed to mention in her brief that she had been employed in her current position for less than three weeks and had become a veteran enrollee in anger management and parenting classes, enrolling in, and subsequently quitting or being disenrolled from three previous classes. In considering the motion, the lower court stated:
There [is] really no verification or anything to show that [A.E.R.] had made-or had been in substantial compliance with the requirements [of the service agreement], especially with regard to the drug testing. And so all those things, taken into consideration of the statutes that require we move these cases through to give some kind of permanency-the objective being what's in the best interests of the children so they can either be placed in some type of permanent care or custody or else where adoption is needed to secure the stable and safe placement of the children . . . However let's see, one, two, three, four different review hearings, we gave [A.E.R.] the opportunity to come in and show that she had done something and was trying to make some type of concerted effort to have reunification with her children. That was not shown. I don't have any good cause for a continuance at this time.
Based on the facts surrounding A.E.R.'s motion for continuance, giving substantial weight to the time in which A.E.R. had to complete the service agreement's requirements, we find that the lower court's denial of her motion for continuance did not result in a manifest injustice. Therefore, this issue is without merit.
IV. Whether the requirements of the service agreement were economically unreasonable.
¶ 14. A.E.R. argues that the requirements of the service agreement were financially out of reach, and DHS should have known they would have been unattainable given her income. The facts of this case paint a different picture. Brown testified that both the parenting and anger management classes would not have cost A.E.R. anything to attend. All she had to do was show up and participate. She failed to accomplish this. Secondly, while the required drug tests were generally not free of charge, DHS offered to pay for a drug test the day of trial, which A.E.R. refused because she admittedly would have failed it. Lastly, testimony revealed that the psychological evaluation would have cost A.E.R. between $500 and $1,000, and, while this is a substantial sum, A.E.R. admitted that she had made no effort to comply with the requirement, testifying *272 that she had not saved one dollar towards the cost. It is evident that the reason A.E.R. did not comply with the service agreement is not the cost of the requirements, but her lack of desire to do so, failing even to complete those requirements with no cost. We find that this issue is without merit. Accordingly, we affirm the lower court's ruling.
¶ 15. THE JUDGMENT OF THE FORREST COUNTY YOUTH COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.